UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANNIE COLE #200962,

    Plaintiff,                    Civil Action No. 14-11325
                                  Honorable Nancy G. Edmunds
v.                                Magistrate Judge Elizabeth A. Stafford

BENJAMIN MAULDIN, *et al.*,

    Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISS PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE DUE TO FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES [R. 55]

**I.   INTRODUCTION**

Plaintiff Annie Cole, a Michigan Department of Corrections ("MDOC") prisoner proceeding *pro se*, alleges that she was penalized with segregation and a misconduct ticket when she objected to being transferred to a unit in which an inmate who had previously assaulted her was housed.  Lieutenant Benjamin Mauldin (the only remaining defendant) moves for summary judgment, arguing that there is insufficient evidence to support Cole's retaliation claim, that he is entitled to qualified immunity and that Cole failed to exhaust her administrative remedies.  [R. 55].  The Court finds that Cole has sufficient evidence to sustain her retaliation claim and

that qualified immunity should be denied, but Mauldin's motion for summary judgment **[R. 55]** should be **GRANTED** and this case should be **DISMISSED WITHOUT PREJUDICE** due to Cole's failure to exhaust her administrative remedies.

## II.   BACKGROUND

According to the operative verified amended complaint, Cole was housed at the Women's Huron Valley Correctional Facility when she was ordered to move to Unit 5, where "prisoner Wright" was housed. [R. 29, PgID 176]. She protested to various Huron Valley officials that she could not move to Unit 5 because Wright had stalked her, demanded sex and sliced her with a broken razor in the shower. [*Id.*] Cole solicited the help of two officers, one of whom confirmed that Cole's life would be in danger if she were moved to Unit 5. [*Id.*, PgID 176-77]. Her protests were rebuffed. Cole packed her property, but then asked that the Control Center be called; Mauldin responded to that call. [*Id.,* PgID 177]. Cole explained to Mauldin the reason that she feared being transferred to Unit 5 and told him that he could verify her account by talking to two other Huron Valley officials and health care, where her cut wrist had been treated. [*Id.*]. Cole requested that she be moved to another housing unit instead of Unit 5 or to protective custody. [*Id.*].

According to Cole, "Mauldin became angry because [she] was attempting to verbally resolve her grievance . . . . [She] was trying to protect herself from serious harm and named staff members were knowingly placing her in [imminent] danger." [*Id.*, PgID 177]. Mauldin responded that protective custody and segregation were the same thing and that she would be going to segregation. [*Id.*, PgID 178]. Mauldin revoked Cole's bond and directed that she be ticketed for disobeying a direct order. [*Id.*, PgID 178, 180].[1]

A hearing on the misconduct ticket resulted in Cole being found guilty, being sentenced to thirty days in segregation and losing her prison job. However, the finding of guilt was overturned by a state circuit court judge because the MDOC failed to use reasonable efforts to obtain statements from two recently retired witnesses identified by Cole as having knowledge of her history with Wright. [R. 55-4, PgID 412-19]. Cole alleges that, at the new hearing on remand, her evidentiary requests were satisfied, leading to the dismissal of her misconduct ticket. [R. 29, PgID 180].

---

[1] Cole states that another officer wrote the misconduct ticket, but she and two witnesses allege that Mauldin ordered the officer to write the ticket. [R. 58, PgID 581, 593-94; R. 55-2, PgID 386].

## III. Analysis

### A.

Since Mauldin argues for summary judgment based on both the merits of Cole's First Amendment retaliation claim and her alleged failure to exhaust administrative remedies, this matter raises three possible outcomes: (1) a full denial of Mauldin's motion; (2) summary judgment on the merits based upon a finding that there is insufficient evidence to support the retaliation claim; or (3) dismissal without prejudice for failure to exhaust administrative remedies.

Summary judgment as a matter of law of Cole's First Amendment retaliation claim should be granted if Mauldin shows that there is no genuine dispute as to any material fact. Federal Rule of Civil Procedure 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011*

4

*Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Although a "summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings, such as affidavits or documentary evidence," *Anderson v. Jutzy,* No. 15-11727, 2016 WL 1211747, at *3 (E.D. Mich. Mar. 29, 2016), granting summary judgment due to failure to exhaust administrative remedies is not on the merits, and requires dismissal without prejudice.  *Adams v. Smith*, 166 Fed. Appx. 201, 204 (6th Cir. 2006).

Viewing the evidence in a light most favorable to Cole, she has presented sufficient evidence to survive summary judgment of her First Amendment retaliation claim on the merits.  But she failed to exhaust her administrative remedies, which requires dismissal of her complaint without prejudice.

**B.**

Retaliation against a prisoner in response to her exercise of a constitutional right violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).  In order to set forth a First Amendment retaliation claim, a prisoner must establish that: (1) she was engaged in protected conduct; (2) an adverse action was taken against her

5

that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

In his motion, Mauldin argues that Cole cannot sustain a retaliation claim because he would have moved her to segregation even if she had not complained to him due to her earlier refusal to move to Unit 5; because he did not make the final decision to transfer her to Unit 5; and because he was unaware that Cole had previous issues with Wright. Mauldin maintains that he believed that Cole was trying to interfere with the staff's ability to freely transfer her and maintain order. [R. 55, PgID 365-66]. These arguments are not tethered to the legal elements of retaliation and are unavailing.

Regarding the first element, Cole had a First Amendment right to pursue a grievance in response to her transfer, *Pasley v. Conerly,* 345 Fed. Appx. 981, 984-85 (6th Cir. 2009), and MDOC grievance policy required her to first attempt to resolve the dispute informally. MDOC Policy Directive 03.02.130, ¶ P (effective July 9, 2007).[2] She had the right to voice her objection to the transfer in an orderly manner that was "not inconsistent

---

[2] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

6

with [her] status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Mauldin has not alleged nor presented evidence that the manner in which Cole voiced her objection was inconsistent with her status as a prisoner.

Concerning the second element, a transfer to segregation and the penalty of a misconduct ticket are adverse actions that would deter a person of ordinary firmness. *Thaddeus X*, 175 F.3d at 396; *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002). Mauldin's claim that he did not make the final determination regarding Cole's transfer to Unit 5 is immaterial. He acknowledges that he was the one who made the decision to send her to segregation and that he signed off on her misconduct ticket. [R. 55-2, PgID 386]. Those are the alleged adverse actions.

Finally, with respect to the third element, Mauldin's argument that he would have made the decision to send Cole to segregation regardless of whether she had made a complaint to him is factually and legally unavailing. Factually, Mauldin stated in his answer to interrogatories that he does not "recall any information pertaining to this incident" or the reason that he revoked Cole's bond. [R. 58, PgID 602-03]. Yet, when alleging that he would have penalized Cole even in the absence of her complaint to him, he accuses Cole of trying to "manipulate or control" her housing. [R. 55-2,

7

PgID 386-87]. This statement flies in the face of evidence that Cole was merely voicing concern for her safety, that Cole had offered the names of officials who could corroborate that she had been violently attacked by Wright and that Cole had requested a transfer to protective custody. [R. 58, PgID 593-94]. Noticeably absent from Mauldin's motion is any evidence that Cole made up the allegations about Wright or any other explanation for why Cole would request protective custody rather than a transfer to Unit 5. Mauldin's unsubstantiated accusation that Cole was simply attempting to manipulate and control her housing, despite his alleged lack of memory regarding the incident, is not well-taken.

And even though Mauldin characterizes Cole as refusing to move as directed, she denies that she refused to move and a witness corroborates that she had packed up her belongings and was ready to move, even as she urged officials not to transfer her to Unit 5. [R. 29, PgID 177; R. 58, PgID 582-83, 594]. He presents no evidence that she refused a direct order and, again, he does not recall the incident. [R. 58, PgID 602].

Legally, it does not matter whether Cole directed her verbal grievance to Mauldin or other officials; her verbal grievance constituted protected First Amendment activity and prison officials "may not place the prisoner in segregated housing or transfer h[er] to another prison as a means of

8

retaliating against h[er] for exercising h[er] First Amendment rights." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010).

Mauldin also asks the Court to find that he is entitled to qualified immunity with respect to the First Amendment claim. Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). For the reasons stated above, there is a genuine issue of material fact regarding whether Mauldin violated Cole's First Amendment right against retaliation. Additionally, "[i]t is well established that retaliation for a prisoner's attempt to assert grievances and/or access the courts is constitutionally impermissible." *King v. Williams*, No. 12-15116, 2013 WL 4718335, at *5 (E.D. Mich. Sept. 3, 2013). This right has been clearly established since at least 1995. *Scott v. Stone*, 254 F. App'x 469, 475 (6th Cir. 2007).

For these reasons, there are genuine issues of material fact regarding Cole's First Amendment retaliation claim and whether Mauldin should enjoy qualified immunity.

## C.

Unfortunately, Cole did not exhaust her administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust all "available" administrative remedies. 42 U.S.C. § 1997e(a). See *Jones v. Bock*, 549 U.S. 199, 218-20 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones*, 549 U.S. at 204.

The PLRA requires "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), but the Act does not define what "proper exhaustion" entails. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Relevant here, the MDOC Policy Directive 03.02.130 sets forth a three-step procedure prisoners must follow in order to exhaust grievances. First, the prisoner must attempt to resolve the problem with the allegedly offending staff member within two business days of becoming aware of the

grievable issue, unless prevented from doing so by circumstances beyond his or her control.  *Id.* at ¶ P.  If the prisoner is unable to resolve the issue, he or she has five business days to file a Step I grievance with the grievance coordinator.  *Id.* at ¶¶ P and R.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he or she has ten business days to submit a Step II grievance appeal.  *Id.* at ¶ BB. Finally, if the prisoner continues to be dissatisfied with the Step II response, or does not receive a timely response, he or she may file a Step III grievance appeal within ten business days.  *Id.* at ¶ FF.

Mauldin attached copies of all of Cole's grievances to his motion, and none related to the alleged retaliation at issue here.  [R. 55-6, PgID 428-62].[3]  Cole responds that she was precluded from grieving any issues related to a misconduct hearing, and that Mauldin's retaliation was the catalyst for the hearing.  [R. 58, PgID 587, citing R. 58, PgID 597-98].  Cole is referring to MDOC Policy Directive 03.02.130 ¶ F, which states in part that "[d]ecisions made in hearings conducted by hearing officers" are not grievable.

But Mauldin's alleged retaliation was not a decision made in a hearing or by a hearing officer, so ¶ F does not apply.  *See Anthony v.*

---

[3] Some of the grievances attached are illegible, but they appear to predate the events at issue.

*Ranger*, No. 08-CV-11436, 2011 WL 3839771, at *3 (E.D. Mich. May 9, 2011), *report and recommendation adopted*, No. 08-11436, 2011 WL 3841937 (E.D. Mich. Aug. 29, 2011) ("Defendant Williams' decision to issue major misconduct tickets to Plaintiff on February 16, 2006 and March 2, 2006 was not a 'decision[ ] made in hearings conducted by hearing officers.'"); *Manley v. McComb*, No. 1:11-CV-149, 2012 WL 967096, at *1 (W.D. Mich. Mar. 21, 2012) ("the Policy does not apply to Plaintiff's retaliation claim against Officer Gill because Officer Gill did not render the misconduct hearing decision and Plaintiff's retaliation claim concerns events that occurred prior to the misconduct decision."). Cole's retaliation claim was grievable and, because she failed to exhaust her administrative remedies, it should be dismissed without prejudice. *Id.*

## IV. CONCLUSION

The Court **RECOMMENDS** that Mauldin's motion for summary judgment **[R. 55]** be **GRANTED,** and that this case be **DISMISSED WITHOUT PREJUDICE.**

Dated: May 13, 2016  s/Elizabeth A. Stafford
Detroit, Michigan  ELIZABETH A. STAFFORD
  United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 13, 2016.

                                  s/Marlena Williams
                                  MARLENA WILLIAMS
                                  Case Manager